IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| Yosco, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | 1:10cv564 (JCC) |
| Aviva Life and Annuity Co., ) | |
| ) | |
| Defendant. ) | |

## **MEMORANDUM OPINION**

This case illustrates the importance of precision in setting a cancellation date for a life insurance policy. Before the Court are the parties' Cross Motions for Summary Judgment. For the following reasons, the Court will grant summary judgment in favor of Plaintiffs.

### I. Background

The following facts are undisputed. On June 1, 2004, Aviva Life and Annuity Company ("Aviva" or "Defendant") issued a Term Life Insurance Policy (the "Policy") to Mark Papa ("Papa" or "Decedent") in the amount of $500,000.00. (D MSJ[1] ¶ 1; P MSJ ¶¶ 1, 9.) Papa was both the owner and the insured under the

---

[1] For the purposes of this Memorandum, the parties motions for summary judgments will be referenced as ("P MSJ" and "D MSJ"), respectively. Oppositions will be abbreviated ("P Opp." and "D Opp."), and replies ("P Reply" and "D Reply").

Policy. (D MSJ ¶ 2.) His children, Erin Yosco and Christian Papa, the Plaintiffs in this case, were named as the two primary beneficiaries under the Policy. (D MSJ ¶ 3; P MSJ ¶ 7.)

Papa called Aviva on June 18, 2009, orally requesting cancellation of the Policy. (D MSJ ¶¶ 4, 5.) An Aviva representative informed Papa that he would need to submit a signed and dated written request specifically identifying the policy and requesting that it be cancelled. (D MSJ ¶ 6.) Papa's call and request were noted in Aviva's "Phone Pad" system. (D MSJ ¶ 7.)

That same day, Aviva received a facsimile from Papa requesting cancellation of the Policy in writing (the "June 18 Fax"). (D MSJ ¶ 8; P MSJ ¶ 3.) The text of the letter read:

> Dear Sir/Madame
>
> This is to inform you that I am cancelling the above referenced term life insurance policy, effective immediately.
>
> Thank you for your attention to this matter.
>
> Respectfully,
>
> Mark A Papa

(D MSJ Ex. 3.)

At the time he sent this fax, Papa had already paid the full June 2009 premium for the Policy. (D MSJ. ¶ 9.) Under the Policy, Papa's choice to pay his premiums on a monthly basis meant that his payment provided coverage through 11:59 p.m. on

2

the last day of that month. (D MSJ ¶ 10.) So, under Aviva's understanding, as of the June 18 Fax, Papa had already paid for the entire month of June, 2009. (D MSJ ¶ 12.)

Aviva's customary practice, in the event of a cancellation, was not to issue a pro-rata refund of the remaining premium amount, but to continue coverage through the end of the billing cycle. (D MSJ ¶ 11.) Accordingly, Aviva did not refund any of Papa's premium, and, in its view, coverage for Papa continued through June 30, 2009, at 11:59 p.m.

Papa died the next day, on July 1, 2009. (P MSJ ¶ 4.) One day later, on July 2, 2009, Aviva sent a letter to Papa stating the following

> Dear Policyowner:
>
> We have received your recent request to cancel the above-mentioned policy.
>
> As requested, this policy has been cancelled effective July 1, 2009. At the time of cancellation, there was no cash value.
>
> It has been a pleasure to be of service to you . . . .

(D MSJ Ex. 4.)

Plaintiffs notified Aviva of Papa's passing on July 6, 2009, but Aviva denied Plaintiffs' claim for insurance benefits "[b]ased on Papa's cancellation of the Policy prior to his death." (D MSJ ¶¶ 14-16.)

Plaintiffs filed suit for the insurance benefits in Arlington Circuit Court on May 27, 2010, and Defendant removed the case to this Court on May 28, 2010. Defendant moved for summary judgment on October 1, 2010 [Dkt. 10], and Plaintiffs moved for summary judgment on October 18, 2010 [Dkt. 15]. Both parties' motions are before the Court.

## II. Standard of Review

Summary judgment is appropriate only if the record shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th Cir. 1996) (citations omitted). The party seeking summary judgment has the initial burden of showing the absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248.

Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). The party opposing summary judgment may not rest upon mere allegations or

denials. Rather, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (quotation omitted).

Unsupported speculation is not enough to withstand a motion for summary judgment. *See Ash v. United Parcel Serv., Inc.*, 800 F.2d 409, 411-12 (4th Cir. 1986). Summary judgment is appropriate when, after discovery, a party has failed to make a "showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. In reviewing the record on summary judgment, "the court must draw any inferences in the light most favorable to the non-movant" and "determine whether the record taken as a whole could lead a reasonable trier of fact to find for the non-movant." *Brock v. Entre Computer Ctrs., Inc.*, 933 F.2d 1253, 1259 (4th Cir. 1991) (citations omitted).

### III. Analysis

"In Virginia, insurance policies are construed in accordance with traditional principles of contract law." *US Airways, Inc. v. Commonwealth Ins. Co.*, No. 03-587, 2004 WL 1637139, at *4 (Va. Cir. Ct. July 23, 2004). When interpreting insurance contracts, the court keeps in mind that their "language is ordinarily selected by insurers rather than by policy holders." *Seals v. Erie Ins. Exch.*, 277 Va. 558, 562

(2009) (quoting *St. Paul Fire & Marine Ins. Co. v. Nusbaum & Co.*, 227 Va. 407, 411 (1984)). "Where two constructions are equally possible, that most favorable to the insured will be adopted." *Id.* And where an insurer relies upon cancellation as a defense, it bears the burden of proof. *Nat'l Union Fire Ins. Co. v. Dixon*, 206 Va. 568, 571 (1965).

The insurance policy at issue here lacked a cancellation provision. The parties agree that, absent such a provision, mutual consent is required to cancel the insurance policy. *See, e.g., Jackson v. Lambert*, 492 So.2d 498, 502 (La. App. 1 Cir 1986). "There must be a meeting of minds, or mutual assent, to constitute a valid cancellation, and each party must act with knowledge of the material facts." 43 Am. Jur. 2d § 445. The Policy specified, moreover, that "[a]ll elections, designations, changes, and requests must be in a written form satisfactory to us and will become effective only upon our approval." (D MSJ Ex. 1 at 5.) We therefore look to contract law principles in considering whether--and when--a meeting of minds regarding cancellation occurred in this case.

Mr. Papa's June 18 Fax requesting cancellation "effective immediately" was, for contract purposes, the "offer." That offer terminated, however, with the death of the offeror. Restatement (Second) of Contracts § 48 (1981) ("An offeree's power of acceptance is terminated when the offeree or offeror

dies . . . ."); *see id.* cmt. A ("The offeror's death terminates the power of the offeree *without notice to him.*") (emphasis added). Thus, the offer was no longer valid as of July 2, the date of Aviva's purported "acceptance," and the day after Papa's death. *See* Restatement (First) of Contracts § 64 ("An acceptance . . . is operative and completes the contract as soon as put out of the offeree's possession, without regard to whether it ever reaches the offeror. . . ."); *Consolidated Sales Co v. Bank of Hampton Roads*, 193 Va. 307, 318 (1952) ("[A]n acceptance . . . constituting a binding contract was consummate upon the posting of each invoice, whether or not it was ever received by the bank.").

Thus, because Aviva's attempted acceptance was sent after Papa's death, there was no mutual consent as to cancellation before his death, meaning that the Policy remained in force when he died. This Court will therefore grant summary judgment in favor of Plaintiffs.

Moreover, even if the July 2 Letter could have functioned as an acceptance during Papa's lifetime despite coming after his death, it still would not be an acceptance, because its terms materially varied from the offer. "It is elementary that in order to form a contract, there must be no variance between the acceptance and the offer." *Richeson v. Wilson*, 187 Va. 536, 546 (1948). "[A]cceptance on terms varying

from the offer is a rejection of the offer." *Bloomberg-Michael Furniture Co. v. Coppes Bros. & Zook*, 141 Va. 18, 32 (1925). "[An] acceptance must be unqualified and no point left open for future consideration or negotiation between the parties." *Id.*

Here, the June 18 fax stated, in relevant part, "This is to inform you that I am cancelling the above referenced term life insurance policy, *effective immediately*." (emphasis added). The July 2 Letter responded: "As requested, this policy has been cancelled *effective July 1, 2009*." (emphasis added). These correspondences materially vary as to the effective date of cancelation, meaning that, again, there was no mutual consent as to the cancellation of the policy.[2]

## IV. Conclusion

For the reasons stated above, the Court will grant Plaintiff's Motion for Summary Judgment.

November 23rd, 2010
Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

James C. Cacheris
UNITED STATES DISTRICT COURT JUDGE

---

[2] Aviva appears to also argue that, because Papa had paid his premiums only up through June 30, 2009, at 11:59 p.m., "coverage terminated prior to Papa's death." (D MSJ at 7.) This argument is belied by the Policy provision regarding "Grace Period," which states, "A grace period of thirty-one days will be allowed for the payment of each premium after the first. The policy will continue in force during the grace period." (D MSJ Ex. 1 at 7.) Thus, even if Papa had not yet paid his premium for July, he was in the grace period and his policy remained in force on July 1, the date of his death.

8